# United States District Court

| SOUTHERN | DISTRICT OF | IOWA |

RECEIVED
13 MAR -8 PM 4: 53

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA

V.

HARRY LINCOLN GARRISON,
MATTHEW STEVEN STEWARD,
ALLEN FORTNER, JR.,
BRIAN WATSON,
ORLANDO VALDEZ

**CRIMINAL COMPLAINT**

CASE NUMBER: 4:13-mj-41

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>November 27, 2012 through March 4, 2013,</u> in <u>Polk</u> county, in the <u>Southern</u> District of <u>Iowa</u> defendants did,

Knowingly and intentionally conspired with others, known and unknown, to distribute a controlled substance, in violation of Title <u>21</u> United States Code, Sections <u>841(a)(1) and Sections 846,</u> and I further state that I am a <u>Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives,</u> and that this Complaint is based on the following facts:

See Attachment "B" - Affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

*[signature]*

KELLY D. ETNIER, Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to before me and subscribed in my presence,

<u>March 8, 2013</u>
Date

at <u>Des Moines, Iowa</u>
City and State

<u>U.S. Magistrate Judge</u>
Name & Title of Judicial Officer

*[signature]*
Signature of Judicial Officer

**Affidavit In Support of Complaint**

On March 7, 2013, I, Kelly D. Etnier, your affiant, being first duly sworn upon his oath, deposed and state the following:

1. I, Kelly D. Etnier, being duly sworn, state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the U.S. Department of Justice and have been so employed since January of 2002. Prior to my employment with ATF, I was a police officer with the Davenport, Iowa Police Department for approximately six years. I am currently assigned to ATF's National Response Team and have ancillary duties as a Certified Explosives Specialist (CES).

2. ATF is the primary agency responsible for enforcing the Federal firearms laws with ancillary jurisdiction of Federal narcotics laws. I have received training and participated in hundreds of investigations of firearms and drug/controlled substances.

3. This affidavit contains information necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

4. In November 2012, ATF Special Agents in Des Moines, Iowa, initiated an investigation into the activities of Harry Lincoln GARRISON III, aka Harry WOLFE (DOB 03-09-87) for illegal firearms and illegal narcotics trafficking. GARRISON resides at 1715 Arlington Ave, Des Moines, Iowa.

5.  Between November 27, 2012, and March 2013, GARRISON has had multiple contacts with an ATF Confidential Informant (hereinafter referred to as CI) and ATF Special Agent (S/A) Wesley Williamson who is acting in an undercover capacity and whose undercover persona is that of a cocaine trafficker and courier.

6.  Since the investigation was initiated, the CI has conducted controlled purchases of firearms and drugs from GARRISON and/or GARRISON's associates. In that time frame, GARRISON or GARRISON's associates have sold seven (7) firearms, five (5) rounds of ammunition and 188 grams of suspected marijuana to the CI. The CI is a previously convicted felon and is not able to possess firearms and/or ammunition under federal law. GARRISON is aware of the CI's prior felony conviction.

7.  During this investigation, GARRISON has also discussed with the CI and S/A Williamson his involvement and his knowledge in residential burglaries and home invasions in the Des Moines, Iowa metro area. GARRISON has also expressed a desire to conduct a home invasion in the Des Moines, Iowa metro area with the CI and Agent Williamson in which several pounds of cocaine would be taken from a residence.

8.  The following paragraphs provide a more thorough and detailed account of the investigation and its evolution as to where it currently stands:

9.  On 11-27-12, an ATF CI purchased approximately 41 grams (packaged weight) of suspected marijuana from GARRISON at his residence located at 1715 Arlington Avenue in Des Moines. The CI paid $400.00 for the suspected marijuana. The CI wore a recording device during the drug transaction.

10. On 12-03-12, an ATF CI arranged to purchase approximately 27 grams of suspected marijuana from GARRISON at his residence located at 1715 Arlington Avenue in Des Moines. The CI said that GARRISON's source for the marijuana was Matthew Steven STEWARD ( DOB 08-08-92).

11. At approximately 12:02 p.m., S/A Kelly Etnier (acting in an undercover capacity) accompanied the CI to GARRISON's residence. The CI made contact with GARRISON and GARRISON's girlfriend, identified as Heather NEILSON (DOB 10-31-83). At approximately 12:20 p.m., a white Chevy Monte Carlo bearing Iowa tags 334-ZTF arrived at GARRISON's residence and pulled into the driveway. The vehicle was driven by a tall, slender white/male.

12. The tags corresponded to Matthew Steven STEWARD of 1306 E. 12th Street, Des Moines, Iowa. A criminal history inquiry for STEWARD revealed a 2011 conviction in Polk County for Possession of a Controlled Substance (Deferred Judgment). After STEWARD arrived, the CI purchased approximately 27 grams of marijuana from GARRISON that was delivered by STEWARD. The CI paid $400.00 for the suspected marijuana. The CI wore a recording device during the drug transaction.

13. On 12-14-12, at approximately 3:00 p.m., an ATF CI contacted S/A Etnier and stated that GARRISON and an unknown subject were selling a .38 caliber revolver for $300.00 at GARRISON's residence located at 1715 Arlington Avenue in Des Moines. Surveillance was established at GARRISON's residence by ATF Special Agents.

14. At approximately 4:39 p.m., agents observed a white Chevy Monte Carlo bearing Iowa tags 334-ZTF leaving GARRISON's residence. The tags corresponded to a 1984 Monte Carlo registered to Matthew STEWARD. This was the same vehicle identified during the 12-03-12 controlled purchase of suspected marijuana from GARRISON.

15. At approximately 4:49 p.m., a silver Kawasaki motorcycle bearing Iowa tag 4516NL arrived at GARRISON's residence from the west. The driver had on a helmet with a face shield. The motorcycle corresponded to Joseph Richard EARLY ( DOB 05-30-82) of 820 Main Street in Carlisle, Iowa.

16. At approximately 5:34 p.m., S/A Etnier (acting in an undercover capacity) and the CI arrived at GARRISON's residence and parked in the driveway. The CI exited S/A Etnier's vehicle and walked into the residence. The CI asked GARRISON if he could see the firearm. GARRISON handed the CI the firearm.

17. The CI walked out to S/A Etnier's vehicle and showed him the firearm. S/A Etnier identified the firearm as a Lorcin, Model L380, .380 caliber, pistol, bearing serial number 393414. S/A Etnier provided the CI with $300.00, who in turn paid GARRISON for the firearm. The CI wore a recording device during the purchase. GARRISON told the CI that the person driving the motorcycle could also get a TEC 9 pistol for $500.00.

18. On 12-17-12, an ATF CI contacted S/A Etnier and stated that GARRISON was able to take him to a residence on the south side of Des Moines near Shaw and Murray Streets to purchase an AR-15 styled rifle. At approximately 10:41 a.m., agents met with the CI. S/A Etnier provided the CI with $600.00 of buy funds. The CI wore a recording device.

19. At approximately 10:51 a.m., the CI drove to GARRISON's residence at 1715 Arlington Avenue in Des Moines. GARRISON and Heather NEILSON got into the CI's vehicle. GARRISON gave directions to the CI to where the firearm was currently located. NEILSON told the CI she was supposed to be in court later that day. GARRISON, NEILSON and the CI arrived at 905 Shaw Street in Des Moines, Iowa. The CI purchased a Smith & Wesson, Model M&P 15-22, .22 caliber, rifle bearing serial number for $550.00 from David GOMEZ-SOTO (H/M, DOB 12-29-92) of 905 Shaw Street.

20. On 01-07-13, an ATF CI contacted S/A Etnier and said that GARRISON and GOMEZ-SOTO had three firearms available for sale the following day for $500.00. Plans were made to purchase all three firearms.

21. On 01-08-13, at approximately 11:55 a.m., S/A's Kelly Etnier and Dee Loper met with the CI and provided him/her with $500.00 of buy funds. The CI also was provided with a recording device. At approximately 12:09 p.m., the CI arrived at 1715 Arlington Avenue and met with GARRISON and GOMEZ-OTO. The CI purchased the following firearms from GARRISON and GOMEZ-SOTO:

   - High Standard (by Sears and Roebuck), Model 20, 12 gauge shotgun bearing serial number 5832004

   - Marlin, Model 60, .22 caliber, rifle bearing serial number 10451333

   - Ruger, Model 10/22, .22 caliber, rifle bearing serial number 111-67293

22. On 01-10-13, S/A's Etnier and Loper met with an ATF CI and told him/her that the Marlin rifle purchased from GARRISON and GOMEZ-SOTO on 01-08-13 was missing a trigger. Plans were made to go and pick up the missing trigger from GOMEZ-SOTO and GARRISON. The CI was provided with a recording device.

23. At approximately 10:13 a.m., the CI drove to GARRISON's residence at 1715 Arlington Avenue to pick up GARRISON. Once inside the CI's vehicle, GARRISON began talking about a burglary in the neighborhood that his friend "Bryan" (believed to be Bryan MERRYFIELD, W/M, DOB 12-10-86) had committed at 1701 Arlington on 12-30-12. Agents verified that a burglary was committed at this location through the Des Moines Police (Report # 12-40757) and that a television, camera and laptop computer was taken.

24. GARRISON told the CI that "Bryan" entered the residence at around 1:00 a.m. and that the police later knocked on his door asking if he had seen or heard anything. GARRISON told the CI he was surprised the CI hadn't heard anything about it on the night of the burglary.

25. GARRISON told the CI that he continues to smoke marijuana and that he hasn't sold that much since he's gotten out of prison. GARRISON said that he gets most of his marijuana from Matt STEWARD. GARRISON also commented that his friend "Bryan" had recently gotten out of prison for burglary. GARRISON and the CI soon arrived at 905 Shaw and picked up the missing trigger from GOMEZ-SOTO.

26. On 01-18-13, an ATF CI arranged the purchase of a Glock, Model 21, .45 caliber pistol from GOMEZ-SOTO at Lupita's Boutique located at 1605 Grand Avenue in Des Moines for $800.00. The firearm had an obliterated serial number. The CI purchased the firearm for $800.00 and was wearing a recording device. The firearm was later send to the DCI lab for serial number restoration, however, the method of obliteration was so severe, the numbers were not restored.

27. Following the purchase, the CI showed text messages to S/A Loper that he/she had received the night before at 7:47 p.m. and 7:48 p.m. from Heather NEILSON (GARRISON's girlfriend) from 515-441-0682. NEILSON was upset that the CI was now going directly to GOMEZ-SOTO for firearms and that she and GARRISON were owed money.

28. On 01-22-13, an ATF CI met with ATF S/A's Etnier and Loper and stated he/she could purchase a rifle from GOMEZ-SOTO at 1605 Grand Avenue in Des Moines at Lupita's Boutique. The CI said that GOMEZ-SOTO had contacted him one or two days prior asking about his willingness to purchase another firearm from him.

29. At approximately 10:15 a.m., agents met with the CI and provided him/her with a recording device. The CI called GOMEZ-SOTO at 515-505-0608 and arranged a meeting time of 12:00 to buy the rifle. The CI told GOMEZ-SOTO they could also talk about other stuff (narcotics).

30. At approximately 11:43 a.m., the CI was provided with $800.00 of buy funds and then drove to 1605 Grand Avenue in Des Moines to meet with GOMEZ-SOTO. At approximately 12:05 p.m., the CI entered the store and began talking to GOMEZ-SOTO about methamphetamine. The CI soon left the store and called S/A Etnier. The CI said that GOMEZ-SOTO would be able to sell him/her an ounce of methamphetamine for $1400.00 or $1500.00 dollars.

31. At approximately 12:18 p.m., agents met with the CI and recovered a Norinco, MAK-90, 7.62 x 39 mm, rifle bearing serial number 9468730 that was purchased from GOMEZ-SOTO for $750.00. The firearm was found to have been reported stolen from a residence in Altoona, Iowa in 1995. The CI was provided with $1600.00 and recording device.

The CI returned to 1605 Grand Avenue in Des Moines and purchased approximately one (1) ounce of methamphetamine from GOMEZ-SOTO for $1500.00.

32. On 02-01-13, the CI made contact with GOMEZ-SOTO in an attempt to purchase methamphetamine and firearms. GOMEZ-SOTO told the CI that he had been the victim of a home invasion on 01-31-2013 during the late night hours. GOMEZ-SOTO told the CI the suspects wore masks and gloves and hit him about the face and head with a pistol. GOMEZ-SOTO had cuts and bruises and stitches which were observed by the CI.

33. GOMEZ-SOTO told the CI the suspects stole a pound of marijuana as well as his dog from him. GOMEZ-SOTO later told the CI that the suspects also stole an undisclosed amount of cash from him, which greatly infuriated GOMEZ-SOTO's "people" who are involved in the methamphetamine trafficking operation. GOMEZ-SOTO told the CI that earlier in the day on 01-31-13, Matthew STEWARD was at his residence on Shaw to look at some marijuana he had for sale, but never purchased any. GOMEZ-SOTO told the CI this was strange, as STEWARD always purchased marijuana when he visited.

34. GOMEZ-SOTO told the CI that he believed Matthew STEWARD and Harry GARRISON were involved in the home invasion at his residence.

35. On 02-02-13, GOMEZ-SOTO called the CI and said he had seen STEWARD and GARRISON driving in Des Moines and that GOMEZ-SOTO honked at them. GOMEZ-SOTO said STEWARD and GARRISON immediately turned in a different direction in an attempt to elude GOMEZ-SOTO.

36. On 02-05-13, the CI contacted S/A Etnier and said he had just talked with GARRISON at his residence. The CI (who had been directed by S/A Etnier) said he asked GARRISON if he was interested in doing a robbery based on the CI's knowledge of

GARRISON's past criminal activities. GARRISON reportedly told the CI that he was extremely interested in doing one and told the CI that he had done a home invasion before a few years back in which GARRISON and others entered an occupied residence from a second story window and assaulted the occupants before stealing their cash.

37. On 02-05-13, at approximately 1:17 p.m., S/A's Loper and Etnier met with the CI at a predetermined location and provided the CI with a recording device. Agents later observed a red Jeep bearing Iowa tag 894ZXB at GARRISON's residence. The CI stated that the jeep was operated by "Bryan", GARRISON's friend (believed to be BRYAN MERRYFIELD).

38. Shortly thereafter, the CI drove to GARRISON's residence and entered. The CI spoke briefly to GARRISON's elderly grandmother before proceeding upstairs to where GARRISON, MERRYFIELD and NEILSON were located. The CI asked them if they were ready (to commit a robbery). GARRISON said "I'm gonna be there, don't worry about that." GARRISON also said, "I'll shoot a mother fucker" and "If it's in there for sure, I'll go up in there."

39. NEILSON commented that she does drugs and they laughed about how much they would do (drugs) after the robbery. GARRISON told the CI not to tell anyone else (about the robbery) because they are serious as "fuck". They also commented about moving from their home if they were successful.

40. The CI told them that this isn't a "T.V" you are going after (referring to the earlier residential burglary on Arlington), "this is dangerous". GARRISON said, "As soon as you figure it out, call me" and "as soon as your dude is ready to meet me, come get me."

GARRISON added, "We are not backing out." The CI told them it would probably be a couple of weeks before his "guy" comes from Kansas City to talk to them about it.

41. NEILSON talked about who they could rob at the present time due to their money problems. GARRISON said he would take the money he currently had and use it to make t-shirts that say "SWAT" on it. GARRISON also talked about obtaining masks and badges. GARRISON said he was hoping this was "bigger than big". NEILSON said, "it has to be bigger than big".

42. NEILSON and GARRISON continued to talk about making black shirts that looked "official" and that they would have people lay down on the ground. NEILSON also commented about using zip ties. GARRISON and MERRYFIELD could be heard commenting about needing "vests" (ballistic protection). GARRISON told the CI the sooner the better for doing the robbery. GARRISON then related a prior event where he and others had guns loaded into a car ready to drive to Kansas City for a similar robbery.

43. GARRISON also talked about a robbery where they climbed into someone's window and knocked out the resident 4-5 times (This incident is believed to have taken place in June 2010 in Des Moines. The victims were assaulted multiple times and their dog was taken during the attack). GARRISON said they were in the residence for an hour until they found the money hidden in a box in a pile of dirty clothes. GARRISON said again that he was "ready". "Heather" commented again about buying police uniforms.

44. On 02-10-13, at approximately 2:27 p.m, an ATF CI contacted agents and said that Torey REYNOLDS was a source for firearms and that he had one for sale through GARRISON. S/A's Loper and Etnier met with the CI and provided him/her with a recording device and $400.00 of buy funds. (S/A Etnier later spoke with Det. Tom

Griffiths of the Polk County Sheriff's Office who confirmed that REYNOLDS is facing a felony drug charge in Polk County District Court from an October 2012 arrest).

45. At approximately 4:34 p.m., the CI arrived at GARRISON's residence at 1715 Arlington Avenue. GARRISON met the CI outside in his driveway. The CI purchased a Hi Point, Model JCP, .40 caliber, pistol bearing serial number X751290 for $400.00. GARRISON mentioned other firearms he could possibly obtain for the CI.

46. At approximately 5:00 p.m., the CI drove GARRISON to the south side of Des Moines in an effort to pay the gun source the money (Torey REYNOLDS). The CI and GARRISON ended up at the Hy Vee store located at 3221 SE 14th Street. GARRISON got into a silver four door sedan with rims and dark tinted windows. GARRISON got back into the vehicle with the CI and started asking the CI about the home invasion. GARRISON told the CI that "Torey" would not meet anyone to talk about the home invasion.

47. On 02-11-13, the CI was shown a photograph and identified Torey REYNOLDS (W/M, DOB 03-11-90) as the individual who provided a firearm to Harry GARRISON on 12-14-12 during the controlled purchase of a firearm conducted by ATF Special Agents. REYNOLDS was driving a motorcycle that particular evening.

48. Torey REYNOLDS was also previously identified as a suspect in the home invasion style robbery at 3215 Columbia in Des Moines on 06-15-10 (see Des Moines PD case number #10-18726 for further details). During the robbery, the victims were beaten and the female victim reported being sexually assaulted. The male victim was pistol whipped and needed stitches. The suspects stole the victim's dog. The CI stated that GARRISON told him/her that REYNOLDS does home invasions too and that

REYNOLDS has recently stole $20,000 in cash from the "Mexicans" and that they were out looking for him.

49. On 02-13-13, at approximately 7:17 a.m., an ATF CI contacted S/ A Etnier and said that GARRISON contacted him and said that he and Torey REYNOLDS had two stolen firearms for sale. The CI said they wanted $1100.00 for a big gun and $500.00 for a cowboy styled rifle. GARRISON was with the CI during the phone call. S/A Etnier could hear GARRISON say the guns should be thrown in the river (reference to their status as stolen firearms).

50. S/A Etnier asked the CI if he could see pictures of the firearms before purchasing them. At approximately 7:29 a.m., S/A Etnier received two text photographs from Harry GARRISON's phone at 515-441-2695. The photos were of a black powder revolver and a rifle. S/A Etnier called the CI and told the CI he only wanted to purchase the rifle.

51. The CI stated that REYNOLDS and GARRISON were going to be headed to the Polk County Courthouse prior to the gun sale for court. S/A's Loper and Carlson established surveillance at the courthouse and found REYNOLDS and GARRISON inside. Agents followed REYNOLDS and GARRISON as they left the courthouse. They got into a silver 2005 Cadillac STS bearing Iowa tag AMV-497 registered to Alisha Thomas, 4333 Parkridge Avenue, Lot 115 in Pleasant Hill, Iowa.

52. At approximately 10:20 a.m., S/A Etnier met with the CI and provided him/her with $1100.00 in buy funds and a recording device. The CI drove to GARRISON's residence to wait for him and REYNOLDS to return back from court.

53. At approximately 10:45 a.m., REYNOLDS and GARRISON began driving towards 1715 Arlington, but while headed to the residence they saw a surveillance vehicle near the residence and decided not to go into the residence to sell the firearm. The CI called GARRISON and told GARRISON he and REYNOLDS were being paranoid. GARRISON told the CI the firearm was inside the residence and to purchase it from NEILSON.

54. At approximately 10:59 a.m., the CI purchased a Vulcan Arms, Model V15, .223 caliber, rifle bearing serial number 05137 from NEILSON for $1050.00. The gun was concealed in a camouflaged archery case. At approximately 11:16 a.m., S/A Etnier and Loper met with the CI and recovered the firearm, which was loaded with five (5) rounds of ammunition.

55. On 02-17-13, the CI spoke to GARRISON and asked if he was willing to meet one of his associates (actually an undercover ATF Special Agent) at a motel in the Des Moines area to discuss a future home invasion styled robbery involving multiple kilograms of cocaine. GARRISON said that he wanted to meet and would be ready to drive to the proposed meet location on 02-20-13.

56. On 02-19-13, at approximately 5:25 p.m., ATF S/A's Loper, Pritchett, Williamson and Etnier met with an ATF CI and instructed him to place a call to GARRISON at 515-441-2695. S/A Etnier and Loper could hear GARRISON on the phone with the CI. The CI told GARRISON that "his guy" (actually an ATF undercover agent) would be in town on Wednesday and asked if GARRISON wanted to meet with him. GARRISON said he would like to meet with him (the undercover).

57. On 02-20-13, at approximately 3:15 p.m., ATF Special Agents arranged a controlled meeting between Harry GARRISON, Heather NEILSON and ATF Special Agent Wesley Williamson (acting in an undercover capacity) at the Prairie Meadows Casino Hotel in Altoona, Iowa. NEILSON and GARRISON were accompanied by Dusty STREEPER and another unknown individual who did not actually meet with the undercover agent. They arrived in a 2001 Cadillac Deville bearing Iowa tags 377-ZSE and registered to Joseph Richard EARLY of 820 Main Street in Carlisle, Iowa.

58. It should be noted that EARLY is the registered owner of the motorcycle previously driven by REYNOLDS on 12-14-12 when a firearm was delivered to GARRISON's residence at 1715 Arlington Avenue and purchased by S/A Etnier and an ATF CI.

59. During the meeting with the ATF undercover agent, GARRISON and NEILSON said they wanted to do a home invasion robbery for multiple pounds of cocaine. GARRISON also commented about previously robbing "Mexicans" of 30 bricks of marijuana and that he would assemble a crew to assist him with the one described by S/A Williamson. NEILSON said she had stolen cocaine before. GARRISON, after questioning, told the undercover agent he was the ringleader. The undercover agent said they would be stealing approximately twenty four (24) pounds of cocaine.

60. Both NEILSON and GARRISON provided their cell phone numbers to the undercover agent. NEILSON said that she and GARRISON talk about doing the robbery all the time. NEILSON also commented about how she was going to "stomp on" (dilute) some of the cocaine she would receive from the robbery to sell it for profit. S/A Williamson told GARRISON and NEILSON to be ready to meet again on 02-28-13 at the hotel so he could meet their crew and further plan the robbery.

61. On 02-27-13, ATF Special Agents and Des Moines Police arranged for the controlled purchase of a quarter pound of marijuana from GARRISON and Matthew STEWARD at 1715 Arlington Avenue in Des Moines. An ATF CI had contacted S/A Etnier at approximately 3:00 p.m. and said that GARRISON and STEWARD were selling high grade marijuana for $1200.00 per quarter pound.

62. At approximately 3:30 p.m., S/A Etnier and Loper met with the CI and provided him with a recording device and $1200.00 of buy funds. At approximately 3:54 p.m., the CI drove into GARRISON's driveway and parked. GARRISON entered the CI's vehicle as they were waiting for STEWARD to arrive with the marijuana. GARRISON and the CI talked about the upcoming home invasion. GARRISON said he was ready and thought he could get a .45 caliber pistol to use.

63. At approximately 4:15 p.m., Matthew STEWARD arrived at GARRISON's residence driving Iowa plated vehicle AMT-877 which corresponds to a gray 1991 Cadillac Fleetwood registered to Matthew STEWARD at 1306 E. 12th Street in Des Moines. Upon arrival, STEWARD and GARRISON walked into the house to weigh out the marijuana. GARRISON exited the house a short time later and gave the CI the marijuana. The CI left. At approximately 4:20 p.m., agents met with the CI, who turned over to them a plastic bag containing 120 grams of suspected marijuana.

64. On 02-28-13, S/A Loper listened to a recording from a personal recorder that agents had previously provided to an ATF CI. S/A Loper could hear the CI and GARRISON talking about the burglary that occurred on 12-30-12 at 1701 Arlington Avenue in Des Moines and that GARRISON was right there during the burglary. GARRISON also told the CI that he does not want to be robbed (in reference to the home invasion scenario) so he

would make sure to have enough people with him during the robbery to handle the number of people inside the residence where the cocaine was stored.

65. On 03-01-13, an undercover agent with ATF called GARRISON on his cell phone. During the call, GARRISON suggested that the agent come to his residence to further plan the home invasion robbery. The undercover agent agreed. The undercover agent stressed how they needed to properly plan the robbery. GARRISON claimed that he would have eight people available to help him with the robbery.

66. At approximately 11:44 a.m., the undercover agent drove to GARRISON and NEILSON's residence at 1715 Arlington Avenue in Des Moines to talk about the robbery. A white Toyota 4runner bearing Iowa tag 246-YQD was parked in the driveway. The undercover agent met with GARRISON and "Bryan" (who has been identified as Bryan MERRYFIELD (W/M, DOB 12-10-86).

67. During the meeting, GARRISON said he was trying to get two bullet proof vests. GARRISON said he would have people to do the robbery and that the vests were for the first two people through the door. GARRISON said he would also be bringing bear mace. GARRISON said he was going to bring six more people to have at least eight total people to assist. GARRISON and MERRYFIELD both said they wanted to do the robbery.

68. The undercover agent asked MERRYFIELD if GARRISON had explained everything to him. MERRYFIELD acknowledged that he knew. MERRYFIELD inquired how much cocaine they would be getting. The undercover agent said that it was usually seven to nine kilograms and no cash. MERRYFIELD said his cousin was coming to help with the robbery and described him as being 6'5" and 290 pound and half black.

69. On 03-03-13, at approximately 7:43 p.m., the undercover agent (U/C) called GARRISON at 515-441-2695. During the call, the U/C asked GARRISON if he was good to meet the following day. GARRISON said he was. GARRISON spoke about meeting at one o'clock. GARRISON mentioned that his friend, Bryan MERRYFIELD had taken the day off for the meeting.

70. On 03-04-13, at approximately 11:44 a.m., the U/C telephoned GARRISON. GARRISON said he was up all night because of being sick. The U/C asked GARRISON if he wanted him to come to GARRISON's residence to meet. GARRISON agreed. At approximately 1:34 p.m., the U/C drove to 1715 Arlington Avenue in Des Moines to meet with GARRISON and the others. The U/C wore recording devices.

71. Once at the residence, the U/C parked in GARRISON's driveway. Matthew STEWARD's white Monte Carlo was parked in the driveway. GARRISON, Bryan MERRYFIELD, Matthew STEWARD and "Orlando" LNU got into the U/C's vehicle. MERRYFIELD introduced "Orlando" and STEWARD.

72. The U/C told the suspects that it was going to be a robbery of cocaine inside a stash house. The U/C told the suspects that there would be anywhere from five to 12 kilograms left sitting in the house. The U/C said there would be three people inside the house that would all be armed.

73. The U/C inquired of "Orlando" and STEWARD whether or not they had done anything like this before. Both nodded their heads in agreement. The U/C again told them if they didn't want to do the robbery, just to tell him now. GARRISON said they were going to do the robbery. The U/C asked whether or not they would be able to deal with the armed individuals inside the stash house.

74. GARRISON said he had one gun now and would try to get a couple more. GARRISON also said he was going to get bullet proof vests so the first people through the door would have one on. GARRISON also mentioned getting badges to hang around their necks.

75. The U/C requested that the suspects not shoot him during the robbery. GARRISON said not to worry but that they may tie the U/C up with zip ties. GARRISON discussed getting "big guns" and then running into the house announcing themselves as the police. The discussion continued as to how they would enter the residence to do the stash house robbery. The U/C ended the meeting by telling them there would be almost 24 pounds of cocaine inside the stash house.

76. "Orlando" told the U/C, "Somebody is getting shot, I already know."

77. On 03-06-13, in the evening hours, S/A Dee Loper observed Matthew STEWARD's white Chevy Monte Carlo parked at GARRISON's residence. On 03-07-13, at approximately 8:05 a.m., S/A Loper drove by STEWARD's residence at 1306 E. 12th Street in Des Moines, Iowa. STEWARD's white Chevy Monte Carlo was parked in front of the residence. S/A Loper observed frost on the windows and it appeared to have been parked there throughout the evening and morning hours.

78. As previously noted in earlier paragraphs, STEWARD delivered marijuana to GARRISON and an ATF CI on 12-03-12 in the white Chevy Monte Carlo. STEWARD's vehicle was also seen at GARRISON's residence on 12-14-12 during a controlled firearm purchase. On 02-27-13, STEWARD delivered a quarter pound of marijuana to GARRISON and an ATF CI at GARRISON's residence driving a gray Cadillac Fleetwood bearing Iowa tag AMT-877. STEWARD and GARRISON weighed out the appropriate amount in GARRISON's residence before selling it to an ATF CI.

79. Both the Monte Carlo and the Cadillac are registered to STEWARD at 1306 E. 12th Street in Des Moines. STEWARD's driver's license lists 1306 E. 12th Street in Des Moines, Iowa as his address.

80. On 03-04-13, STEWARD and other co-conspirators met with the U/C at GARRISON's residence. STEWARD acknowledged that he had done a robbery such as this before.

81. On 03-08-13, at approximately 3:05 p.m., the U/C met with Harry GARRISON, Matthew STEWART, Orlando VALDEZ, Brian WATSON and Allen FORTNER, Jr. at the HyVee parking lot near the intersection of Euclid and Martin Luther King Parkway in Des Moines, Iowa. During this meeting, the U/C asked Allen FORTNER, Jr. and the other four present if they knew this was a robbery of twenty four pounds of cocaine. All acknowledged that they knew and intended to participate in the robbery. A short time later all the individuals were taken into custody.

82. The suspects possessed a 9mm pistol with an obliterated serial number; a 45 caliber pistol; zip ties; bear mace; and a hunting knife to use in facilitating the robbery.

83. S/A Etnier has spoken with ATF Interstate Nexus Specialist Phillip Pritchett, who has confirmed that all of the firearms noted above were produced outside the state of Iowa.

84. Based upon the aforementioned information and overall investigation, the affiant believes that there is probable cause to believe that the above named individuals violated the following federal laws: 21 United States Code, Section 841 and 846 of knowingly and intentionally distributing and conspiring to distribute a controlled substance.

FURTHER YOUR AFFIANT SAYETH NOT.

Dated: 3-8-13

SA Kelly D. Etnier
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and Sworn to Before Me
This 8th Day of March 2013.

The Honorable Celeste F. Bremer
United States Magistrate Judge